SALDANA v KELSEY-HAYES COMPANY

Docket No. 102750. Submitted April 6, 1988, at Detroit. Decided
January 24, 1989. Leave to appeal applied for.

Ralph Saldana brought an action in Jackson Circuit Court
against his employer, Kelsey-Hayes Company, and his supervi-
sor, Fred Graber. Plaintiff alleged that he had sustained a
work-related disability and that defendants, in an effort to
ascertain whether the disability was genuine, had invaded his
privacy when they intruded upon his seclusion by retaining
private investigators who conducted a surveillance of his house,
which surveillance included use of a 1,200-millimeter telephoto
camera lens and entry into his home under false pretenses.
Plaintiff also alleged that defendant Graber, in an attempt to
elicit information from plaintiff's physician, had written a
letter to the physician. The trial court, Gordon W. Britten, J.,
granted summary disposition in favor of defendants, ruling that
there existed no genuine issues of material fact and defendants
were entitled to judgment as a matter of law. Plaintiff ap-
pealed.

The Court of Appeals *held:*

1. In order to prove his claim of invasion of privacy on the
basis of an intrusion upon seclusion, plaintiff must establish (1)
an intrusion by defendants (2) into a matter in which plaintiff
has a right of privacy (3) by a means or method that is
objectionable to a reasonable person. In this case, plaintiff has
shown an intrusion by defendants. However, in light of defen-
dants' legitimate interest in investigating whether plaintiff's
disability was a pretext, plaintiff cannot show that the intru-
sion was into a matter in which he has a right of privacy. Thus,
even if this Court were to find that the means and methods
employed by defendants would be objectionable to a reasonable
person, plaintiff cannot maintain his action against defendants.

2. In the absence of an allegation by plaintiff that the
physician replied to the letter written to him or that the

REFERENCES

Am Jur 2d, Privacy §§ 26, 41.
Investigations and surveillance, shadowing and trailing, as violation
of right to privacy. 13 ALR3d 1025.

physician disclosed information which falls within the physician-patient privilege, the sending of the letter cannot be said to be an intrusion which a reasonable person would find objectionable.

Affirmed.

D. E. HOLBROOK, JR., P.J., dissented in part and would hold that some means of intrusion are so objectionable that even a legitimate purpose should not be permitted to undermine the right of privacy and that in this case plaintiff's allegations of pervasive surveillance through the windows of his home, particularly when accomplished by means of a powerful camera lens, creates a genuine issue of material fact as to whether the intrusion was unwarranted. Judge HOLBROOK would reverse the grant of summary disposition of those parts of plaintiff's claim which relate to surveillance through the plaintiff's windows.

1. PRIVACY — TORTS — INVASION OF PRIVACY — INTRUSION UPON SECLUSION.

To maintain an action for invasion of privacy based on an intrusion upon the plaintiff's seclusion, solitude, or into his private affairs, the plaintiff must show (1) an intrusion by the defendant (2) into a matter in which the plaintiff has a right of privacy (3) by a means or method that is objectionable to a reasonable person.

2. PRIVACY — TORTS — INVASION OF PRIVACY — INTRUSION UPON SECLUSION.

In an action for invasion of privacy where it is alleged that the defendant has intruded upon the plaintiff's seclusion, the defendant's duty to refrain from intrusion is not absolute in nature, but rather is limited by those rights which arise from social conditions, including the business relationship of the parties; thus, an employee does not have a cause of action against his employer for invasion of privacy based on intrusion upon seclusion where the conduct complained of related to the employer's legitimate interest of determining whether the employee continued to suffer from a work-related disability and the conduct included surveillance of the employee by private investigators who observed the employee and his home through the use of telescopic lenses and who gained entry into the employee's home under false pretenses.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Stephen M. Kelley* and *James D. Zazakis*), for plaintiff.

*Berry, Moorman, King, Cook & Hudson, P.C.* (by
*Sheryl A. Laughren*), for defendants.

Before: HOLBROOK, JR., and MACKENZIE and
N. A. BAGULEY,* JJ.

PER CURIAM. Plaintiff appeals as of right from
an order granting summary disposition on the first
two counts of plaintiff's complaint alleging that
defendants had invaded plaintiff's privacy based on
intrusions upon plaintiff's seclusion and private
affairs.

Plaintiff was employed by defendant Kelsey-
Hayes Company in a supervisory capacity at its
Jackson, Michigan, facility. Defendant Fred Gra-
ber was plaintiff's supervisor. Defendant Kelsey-
Hayes' Jackson facility is comprised of several
different buildings connected by a series of walk-
ways and plaintiff travelled from one building to
the next by bicycle. Plaintiff's complaint was based
on alleged injuries to his back, right elbow, and
arm sustained from a fall from a bicycle on com-
pany property in the course of his employment on
March 28, 1985.

Unbeknownst to plaintiff, defendants, suspecting
that plaintiff was malingering, engaged a private
investigating firm to investigate plaintiff and to
attempt to determine the extent of plaintiff's inju-
ries. The objected-to activities include an investiga-
tor (1) observing plaintiff's home from a parked car
down the street from plaintiff's house, (2) telephon-
ing plaintiff "to determine whether anyone was
home," (3) walking past plaintiff's home and ob-
serving plaintiff through a window where the cur-
tains had not been drawn, (4) flagging down a
truck—used to haul trash—as it left plaintiff's
residence and asking the occupants questions rela-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tive to plaintiff's health, and (5) posing as a process server for the purpose of looking around plaintiff's home as much as he could.

On April 6, 1985, the investigator parked his automobile about a thousand yards from plaintiff's home and observed plaintiff through an open window with a 1,200 millimeter camera lens. Plaintiff apparently moved around "freely."

Defendants then engaged another investigator to "tail" plaintiff as he went to several doctors' appointments. The investigator observed how plaintiff walked when he moved from the parking lots to the doctors' offices.

Finally, on April 12, 1985, defendant Fred Graber sent a letter to plaintiff's personal physician attempting to solicit information as to plaintiff's condition and ability to return to work. In the letter, defendant Graber allegedly detailed the investigator's efforts in observing plaintiff and stated that defendants were unsure whether plaintiff was actually injured or not. No reply was made by plaintiff's physician to defendants. Although plaintiff had a medical release allowing him to return to work on April 19, 1985, he did not resume his job.

Plaintiff alleged two counts of invasion of privacy based on intrusion upon seclusion, solitude, or into private affairs. In order to prove a claim of this nature, it is necessary to show (1) an intrusion by the defendant (2) into a matter in which the plaintiff has a right of privacy (3) by a means or method that is objectionable to a reasonable person. *Lewis v Dayton-Hudson Corp,* 128 Mich App 165, 169; 339 NW2d 857 (1983).

Pursuant to MCR 2.116(C)(10), we have reviewed plaintiff's factual allegations and the pertinent documentary evidence, giving the benefit of every reasonable doubt to plaintiff. See *Hagerl v Auto*

*Club Group Ins Co,* 157 Mich App 684, 686-687; 403 NW2d 197 (1987), lv den 428 Mich 900 (1987). We find the trial court correctly granted summary disposition in favor of defendants as to both counts of invasion of privacy.

Under Count I plaintiff can show an intrusion. First, agents of defendants entered plaintiff's home under false pretenses. Also, agents of defendants observed plaintiff through the windows of his home by the naked eye and with a powerful camera lens. Other jurisdictions have held that "window-peeping" is actionable. See *Lewis, supra,* p 168. Whether the intrusion is objectionable to a reasonable person is a factual question best determined by a jury. It may not be objectionable to peer through an open window where the curtains are not drawn, but the use of a powerful lens to observe the interior of a home or of a subterfuge to enter a home could be found objectionable to a reasonable person.

However, even if we find that looking into plaintiff's window with the naked eye and with a powerful camera lens is an intrusion which would be objectionable to a reasonable person, plaintiff still cannot prevail. Plaintiff does not allege facts that show the intrusions were into matters which plaintiff had a right to keep private. Under *Earp v Detroit,* 16 Mich App 271; 167 NW2d 841 (1969), the intrusion must be into a matter in which plaintiff has a right of privacy. The defendants' duty to refrain from intrusion into another's private affairs is not absolute in nature, but rather is limited by those rights which arise from social conditions, *including the business relationship of the parties. Lewis, supra,* p 169. Defendants' surveillance of plaintiff at his home involved matters which defendants had a legitimate right to investigate. Thus, in *Earp v Detroit, supra,* this Court

recognized the right of the defendant employer to engage in investigation of an employee suspected of illegality committed in the course of employment. Also significant to the delimitation of the scope of privacy is whether the circumstances give rise to an expectation of privacy from the standpoint of the plaintiff. See *Lewis, supra.* Plaintiff's privacy was subject to the legitimate interest of his employer in investigating suspicions that plaintiff's work-related disability was a pretext. We conclude that plaintiff does not meet the second requirement of the intrusion into seclusion test. Defendant also has a right to investigate matters that are potential sources of legal liability. See *Early Detection Center, PC v New York Life Ins Co,* 157 Mich App 618, 630-631; 403 NW2d 830 (1986).

In Count II of his complaint, plaintiff alleges that defendant Graber mailed a letter to plaintiff's private physician which attempted to elicit information from plaintiff's physician that is within the physician-patient privilege. Plaintiff does not allege that his physician responded to or in any way supplied information to defendants.

The sending of the letter is arguably an intrusion by defendant and certainly information within the physician-patient privilege is a matter which plaintiff has a right to keep private. We cannot say that the sending of an unsolicited letter is obviously objectionable to a reasonable person. Combined with the fact that defendant received no information, privileged or otherwise, from plaintiff's physician, these facts do not provide proper grounds for a cause of action for invasion of privacy by intrusion upon seclusion. See *Beaumont v Brown,* 65 Mich App 455, 462-463; 237 NW2d 501 (1975), rev'd on other grounds 401 Mich 80; 257 NW2d 522 (1977).

Affirmed.

HOLBROOK, JR., P.J. *(concurring in part and dissenting in part).* I concur with the majority in holding that all except one of plaintiff's allegations are not actionable on the basis of the tort invasion of privacy. My dissent is limited to the issue of whether plaintiff's factual allegation of surveillance accomplished by observations of defendants' agents made through the windows of plaintiff's home, at times using a high-powered camera lens, was properly dismissed by summary disposition pursuant to MCR 2.116(C)(10).

All members of this panel agree that the starting point for an analysis of plaintiff's claim requires a showing of (1) an intrusion by the defendant (2) into a matter in which plaintiff has a right of privacy (3) by a means or method that is objectionable to a reasonable person. With regard to the specific allegations of this case, we all agree that the scope of plaintiff's right of privacy was subject to limitations derived from defendants' legitimate interest as an employer in investigating suspicions that plaintiff's work-related disability was a pretext. The point of departure in this analysis is the majority's conclusion that the employer's legitimate investigatory purpose underlying surveillance of the windows of a dwelling renders plaintiff unable to meet the second requirement for an actionable intrusion upon seclusion.

In my view, this does not end the inquiry. Even if the purpose for conducting an investigation into private matters is legitimate, the defendant is not entitled to carte blanche investigate without regard to the degree and nature of intrusion. "It is clear that this area of the right to privacy is concerned with the manner of procuring informa-

tion as well as the nature of the information obtained." *Beaumont v Brown,* 65 Mich App 455, 462; 237 NW2d 501 (1975), rev'd on other grounds 401 Mich 80; 257 NW2d 522 (1977). Although the question of whether an unwarranted intrusion into privacy ultimately occurred requires factual determinations beyond the purview of this Court, it is difficult for me to imagine circumstances where the use of nonconsensual access to something as essentially private as a personal dwelling does not amount to such an intrusion. Some means of intrusion are so objectionable that even a legitimate purpose should not be permitted to undermine the right of privacy. The means of intrusion and the nature of the privacy interest should be considered cumulatively in order to determine whether a genuine issue of material fact exists.

In dicta, this Court has previously suggested that window-peeping is actionable. See *Lewis v Dayton-Hudson Corp,* 128 Mich App 165, 168-169; 339 NW2d 857 (1983); *Bradshaw v Michigan Nat'l Bank,* 39 Mich App 354, 356; 197 NW2d 531 (1972).

In *Harkey v Abate,* 131 Mich App 177, 182; 346 NW2d 74 (1983), lv den 419 Mich 912 (1984), this Court, in deciding that the defendant's conduct was an unwarranted intrusion into privacy, found significant that the conduct in question had been criminalized by statute as a felony. The fact of a criminal prohibition was understood to evince "a legislative expression of public policy opposed to such conduct." Similarly, being a "window peeper" is a misdemeanor under the disorderly persons statute. MCL 750.167(1)(c); MSA 28.364(1)(c). The existence of this provision could only serve to enhance a plaintiff's expectation of privacy.

I concur that an allegation of pervasive surveillance of the investigatory target through the windows of his own home, particularly when accom-

plished by means of a camera lens, at a minimum
creates a genuine issue of material fact as to
whether the intrusion was unwarranted. I would
reverse summary disposition with respect to that
allegation.